Good morning, your honors. Gary Gassick from Peoria, Illinois, for Mr. and Mrs. Arendt. Welcome to the night. Jerry Arendt and Teresa Arendt. I'm honored to be in your courtroom. First, I'd like to reserve at least three minutes, maybe more, for reply. I want to start with the issue of sovereign immunity claimed by the secretary. I believe that's been answered adequately in my reply brief at pages 1 through 3, where I cite the Webster case and cases it cites and the argument about the sue and be sued clauses. Both or either of those arguments trump the sovereign immunity because those cases basically say Congress is going to preclude a constitutional claim. It must do so clearly. And I'm citing to you a very good example right within ERISA, where Congress at least told us not to sue the Secretary of Labor clearly. ERISA, in the codification section, has a Title I, II, and III. At Title I, you have all the employee benefits. I believe it's subchapter I. At subchapter III, you have planned termination and withdrawal liability. There, section 1451B says, notwithstanding paragraph I, which is referring to inter-disputes between participants and beneficiaries and trustees and labor unions, this section does not authorize an action against the Secretary of Treasury, Secretary of Labor, or the corporation, referring to the Pension Benefit Guarantee Corporation. So right within ERISA, you have a manifestation, I believe, of Webster saying, be clear about it, Congress. And in subchapter I, talking about employee benefits, they made no such statement. You have 1132K, which the district court, I think, applied the converse of what the proper standard would be. The proper standard would be 1132K does not clearly prohibit a constitutional claim. Therefore, it's presumed to be impliedly and fully waived. What relief do you seek at the end of the day? I anticipated that, Judge Hawkins, a little later. I have it ready for you. Get right to it now. I have it ready. I looked at Rule 56. I'm looking for a sentence. The relief we request is, can you complete that sentence? Yes, I can. We want Section 202 of the Pension Protection Act of 2006 found unconstitutionally valid as to the plaintiffs. Can Secretary Solis do that? I respectfully say that's this Court's ability, not the Secretary's. Well, the question, I think, is a related question, is whether the Secretary is a proper defendant on an as-applied challenge as opposed to a facial challenge. I had nobody else that I thought was reasonably in the position of a defendant for this constitutional claim. As I said in my opening brief, the Secretary has all these obligations and rights in an ERISA case, and it's like you mean you can enforce anything under this subtitle of ERISA, and we can restrain you from doing anything involved in this subtitle of ERISA, but we can't stop you from performing an unconstitutional act? I thought that was rather... Well, I suppose. But, you know, the injury here comes from private parties. What you're seeking is to use the Secretary's enforcement as a leverage to have the statute declared unconstitutional. I realize you're in a tricky situation, but we also have to navigate our way through it. It should be clear from my brief that I'm totally hanging that hat on Eastern Enterprises, which is not a plurality decision in this situation because we have Justice Kennedy's identified property interest, the 10 years' worth of Rule of 80 pension benefits amounting to $362,000. At the time... I'm sorry. Go ahead, Your Honor. No, you go ahead first. The thought process I have is referring to the cases cited in my brief, and that is usury v. Elkhorn, okay? There you had the Secretary of Labor. Eastern Enterprises didn't put up any barriers to who we had to sue, and I think Webster doesn't either. If we have a constitutional claim, this Secretary of Labor is the main government body in charge of ERISA. We're charging that the statute is unconstitutional as applied, and in the brief I pointed out the dilemma I was in. If we had sued the pension fund, which one might, in a knee-jerk reaction, do? Well, you saw when I quoted some of their notices, from some of their notices to the participants, a copy of which went to the Secretary of Labor, those notices said, basically, we did what we had to do because the statute required us to do it. You're right that Section 202 does compel private plans to create a rehabilitation plan if it falls into critical status, but does it compel any particular action? The plan still has the flexibility to develop a plan, and it is a process that they have to comply with and go through, right? Is that sufficient for state action? Excuse me, Judge. Yes, I believe it is. A case from this court pretty much said, CYR, I believe it is, C-Y-R, said we find no limitations on who can be sued. Now, maybe you'd say, well, they're not really referring to the Secretary of Labor, but in my briefs I pointed out, Judge Nguyen, that there is a default provision. The carpenters' pension fund could have sat there and said, we're not going to cooperate with that, and then the Secretary by statute was obligated to set up a default rehabilitation plan and enforce it. So in my brief I said that sort of creates a dichotomy there that's absurd or has no common sense associated with it. That is, the Secretary says, we didn't do it. We admit the statute authorizes it, but we didn't do it. Well, you would have had to do it because this statute totally empowers you to take over and enforce a default provision if that plan sat on their hands and said we're not going to cooperate. So at the time this action was filed, had the rule of 80 early retirement been in effect, would your clients have qualified? I have their birth dates, Judge Hawkins. Just a yes or no. Okay, I'm sorry. I swore to myself I wouldn't make that mistake after the two examples earlier. No, he wouldn't. He doesn't qualify. He won't turn 55, Mr. Arndt, until February of next year, 2014. But the co-plaintiff, Mr. Brown, likewise born in 1950, he was a couple months short. So what consequence is that if they didn't qualify as of that point? Of no consequence. And the case I have is, ironically, another case by Justice O'Connor. The case is Adirand, A-D-A-R-A-N-D, 515 U.S. 200. A nice explanation of standing, seeking forward-looking relief is found at pages 210 and 211. And when you look at the ERISA statute itself, at Section 1132A, 1B says, to recover benefits due him under the terms of his plan, to enforce his rights under the terms of the plan. And then emphasizing the next phrase, or to clarify his rights to future benefits under the terms of the plan. So ERISA envisioned that people planning for their retirement, as in the Hines case, do things to support their reliance on what they're doing. I'm hanging in with this plan because I've got the credits. I've got to have two more birthdays, and now I have my Rule of 80 pension plan fulfilled that I contributed to. So Judge Hawkins, I think in page 210 and 211 of Adirand,  whether Adherent has made an adequate showing that sometime in the relative near future it will bid on another government contract, that offers financial incentives to a prime contractor for hiring disadvantaged contractors. Your argument is that this is a property right? Yes, and my argument is supported by the Hines case that recognizes you earn those credits, Mr. Arndt's 37 credits. They can't be taken away. ERISA brilliantly had its own quasi-takings clause in 1154G called the Anti-Cutback Rule, central to cases. Which was done away with by Congress, correct? By who? Congress. Clearly in three words or less, notwithstanding 1154G, correct. But I imagine there are non-critical plans where the Anti-Cutback Rule is still in play. You're down to about three minutes. Do you want to reserve? Please. All right. Thank you. We'll hear from the Secretary. May it please the Court. My name is Susanna Benson and I represent the Secretary of Labor. The District Court properly dismissed this case against the Secretary of Labor and properly found that appellates do not have statutory standing to sue the Secretary and fail to demonstrate any state action, which is a necessary predicate to their constitutional claims against the Secretary of Labor. And even if appellate suits didn't suffer from these defects, their suit would still fail, as the District Court found, because the Pension Protection Act of 2006 easily meets the traditional rational basis test, which is the applicable standard of review for constitutional challenges to national economic legislation. There is a strong presumption of constitutionality which appellates cannot overcome. Would you move the microphone just a little closer to you? Sure. Very good. Thank you. In favor of laws such as the Pension Protection Act that adjust the benefits and burdens of economic life. Far from being arbitrary and irrational, the Pension Protection Act is a measured response to the serious threat that underfunded pension plans pose to the security of normal retirement benefits. So the position of the Secretary is that Mr. Arendt or people in his circumstances cannot sue at all. No. That this is not a matter of naming the proper party or whatever. They simply have no right to sue at all. No, Your Honor. The Secretary believes that private parties should have sued the plan in this case. They were the ones who eliminated the adjustable benefits, not the Secretary of Labor. The way that the Pension Protection Act is positioned is to allow private parties to, the bargaining parties, the plan sponsor, to decide what should we do. We're in critical status. We're in the red zone. We're about to terminate or become insolvent and default. And to meet and discuss how best to shore up their finances. So there is a proper party for Mr. Arendt or people like him to sue. Absolutely. But what's a viable theory? I mean, basically, you don't think the plan did anything illegal or unconstitutional, do you? No. So what's their theory against the plan? Well, if they have a constitutional theory to raise, they should have brought it against the plan and let the intervention statute work as it should. The Secretary of Labor could then have intervened. So why isn't that a matter of amendment then? It may be. But this case was dismissed with prejudice. So if there's a viable theory, even though you think it doesn't work on the merits, why shouldn't the district court allow them to leave to amend it, sue the plan, claim public or allow you to intervene? I believe the district court dismissed it with prejudice because there was no merit to the constitutional claim. The district court adopted the Secretary's position that the Pension Protection Act easily meets the traditional rational basis test for national. The fundamental position you're taking, before you even get to the merits, is that the Secretary of Labor is not a proper party defendant. That's correct. That what should have happened in this case is that the plaintiff should have sued the plan. That's correct. And given notice to the Secretary or the Attorney General, whatever the proper vehicle is, that they're going to challenge the constitutionality of the rollback on cutback, right? That's correct, Your Honor. That's the way the intervention statute is designed to work in cases such as this where there is no state action. So why shouldn't we send this back with directions to the district court to allow the plaintiff to amend, name the plan, and notify the Secretary, et cetera, et cetera? And if you say it's unnecessary because it's unconstitutional, then we're sort of chasing our tail, aren't we? Right. So what do you want us to do? Well, I believe you should affirm the district court, because even if appellate suit didn't suffer from their defects, the Pension Protection Act easily meets the traditional rational basis test for national economic legislation, as the district court found. So you want us to reach the merits? We would like you to affirm the district court on those grounds, yes. But how does it work in practical terms? Because you're arguing that the Secretary shouldn't have been sued in the first place and it should be the plan that sued. And so you want us to basically find that that was correct, that the Secretary shouldn't have been the defendant, but then to reach the rational basis review to reach the constitutionality of the substantive claims? As the district court did, Your Honor, yes. I don't think we can do that. I mean, if you're not the proper defendant, how do we reach the merits? You know, I realize you're in a tough position in one sense, but you're speaking for the government and you speak for future cases, so that's why we ask you. You can say, gee, I think I should win on the merits here, so let's forget real party and interest or proper defendant questions. And then the next government lawyer gets out who's got a tougher case and says, well, you conceded it over here. What's the problem in this case? So, again, what do you want us to do? Well, Your Honor, we urge in our brief that the district court properly found that the Secretary was not a proper defendant, but the district court reached the issue of whether or not the Pension Protection Act should have met on a rational basis test. Normally when we get civil cases and there's a question of a proper party defendant, in the process of moving to dismiss or the district court considering dismissal on that basis, one party or the other says, here's who the proper party is. In fact, if you'd brought simply a motion that said the Secretary Solis is not the proper party, here's the proper party, the plan, specifics, et cetera, et cetera, then they have an opportunity to amend, but that didn't occur here. No, Your Honor. The district court went on and said, oh, you know, well, I met it. Right. I'll decide the constitutionality of this thing. And that's our position that we would. And you think that's okay? Well, I think it may be okay for the district court because we asked them to do it in the alternative, but why is it okay for us? I mean, that's what we call dicta. Right. I mean, if you're right about the real party and interest and the fact that you're the wrong defendant. That's correct, Your Honor. I really am prepared to defend the merits of the constitutionality of the Pension Protection Act. If I can proceed on that. Well, let me ask you a different question. In their pleadings, they have not, at least in my reading of them, identified any action of the Secretary that was coercive or forced the private party, which would be necessary for state action. Correct. However, obviously, if they could amend to allege, and you would say that didn't happen, but they could have alleged a state action claim. Do you agree with that? No, Your Honor. Why is that? There is simply no role for the Secretary here in the operation of the Pension Protection Act. Private parties meet and determine how to best emerge from critical status. I understand that. What I'm saying is that's your defense on the merits, but they certainly could have alleged that the Secretary in some way coerced or didn't enforce or lack of enforcement action, whatever. The Secretary's action had some bearing on this, and you would have come in and said, well, no, the Secretary has no role. But why doesn't that state a claim? If they had alleged state action, that would have been a different matter.  Some overt official action that would trigger the state action. Exactly. So here's my question. In assessing whether or not to affirm the district court's dismissal with prejudice, one of the questions that at least we consider is whether or not an amendment would be futile. And it seems to me there are two potential amendments here that would potentially not be futile. One is that they actually amend their complaint to allege state action. And the second is that they substitute the proper party, namely the pension plan. So explain to me why those two amendments would not be futile or would be futile. The first one would be futile because, first of all, the argument on the default plan, that's not exactly correct. The Secretary does not come in and set up a default plan if the bargaining parties fail to set one. And the way the pension plan is designed is for the plan sponsor to agree with the bargaining parties as to how best to readjust the schedules and emerge from critical status. The plan sponsor must also come up with a default schedule. So there's no state action allegation that I can imagine. There's no state action allegation in this complaint. I'm just questioning whether the district court dismissed it without an opportunity to amend. I'm just trying to figure out if there's a potential amendment, and we'll hear from them as well, that wouldn't be futile as to the Secretary and the involvement of state action. If you don't see so, tell me why. For the state action reasons that I just explained, there's no role for the Secretary. There's no state action here. There's no allegations that there was any coercion by the Secretary. There's no involvement of the Secretary at all. Instead, private parties decided to eliminate subsidized early retirement benefits in response to a funding shortfall that the government did not cause. There's just simply no role for the government in this case. Well, for the futility of the amendment question, Section 202 does compel the creation of a rehabilitation plan. And as a practical matter, in order to emerge from critical status, can there be a rehabilitation plan without some reduction in benefits? There could, Your Honor. In fact, the Pension Protection Act suggests the increase in employer contributions as an option. I don't know if that was available here, but that is something that a pension plan can do to emerge from critical status funding. So you can cut expenditures, reduce benefits, or increase the contributions? That's correct, Your Honor. But again, you can only cut adjustable benefits, and it's all to preserve normal retirement benefits. And the fact of the matter is, without the operation of the Pension Protection Act, plans such as Appellate's plan that were in critical status were in danger of becoming insolvent and terminating, in which case anyone who was even one day away from the Rule of 80 plan would lose those benefits entirely. That's been the law for over 30 years. An insolvent and terminated plan would not be able to pay subsidized early retirement benefits. I know you want to discuss the merits. Why don't you go ahead? Okay. Appellates vastly overstate their limited interest in their plan's early retirement option when they claim that the elimination of that option amounts to an unconstitutional taking and an infringement on their fundamental rights. As the district court properly found, the United States has taken nothing for its own use and has only imposed an obligation, the requirement that critical status plans, those plans that are less than 65% funded, can emerge from critical status, so that they can emerge from critical status. The Labor Department did not eliminate Appellate's early retirement benefits or encourage or compel their elimination. Instead, private parties, whom Appellates have not sued, eliminated their early retirement benefits in response to a funding shortfall that the government did not cause. There is simply no taking by the government here. The government is not taking any assets away. It is simply insisting that private parties adjust their contractual commitments so that they can emerge from critical status and continue to pay normal retirement benefits. And as for the argument that the Pension Protection Act amounts to a regulatory taking like the Supreme Court found in Eastern, this case is easily distinguishable because unlike Eastern, which imposed $50 to $100 million of retroactive liability on a single coal mine operator, there is no assignment of liability here. Furthermore, Appellate's interest in employer-subsidized early retirement benefits, for which they have not yet even qualified, is quite different from the type of specific property rights that have come within the regulatory takings prohibition. Appellate's interest in employer-subsidized early retirement benefits was never absolute. Rather, it was always subject to elimination in the event of plan insolvency or plan termination. Finally, Appellate's claim that the Pension Protection Act impinges on their fundamental rights overstates their interest in subsidized early retirement benefits and ignores the reality of this highly regulated area. Appellate's have no fundamental right to an early retirement option that was always subject to elimination in the event of plan termination and now is subject to elimination due to severe plan underfunding. And like other national economic regulation, the Pension Protection Act is subject to rational basis review. And it was eminently rational for Congress to conclude that it was necessary to allow plans to eliminate or reduce adjustable benefits so that plans could emerge from critical status. The hard reality is that it's simply not possible to restore a substantially underfunded plan to financially sound footing without financial sacrifices. Here the plan is not in a position to pay all of the benefits without taking action to fix its underfunding. Congress recognized that absent the ability to take such action, an underfunded plan could become insolvent. When an underfunded plan is terminated, all those except for non-forfeitable benefits are eliminated. Those benefits that are non-forfeitable, meaning those benefits for which the participant has met the entitlement, met the requirements for entitlement under the plan, those are paid by the PBGC, but the PBGC can only pay a portion of those benefits. The maximum benefit that the PBGC can pay for a participant with 30 years of service is about $13,000 a year. A participant with 20 years of service would get about $8,500 a year. That's far less than the $36,000 a year appellants are counting on when they receive their normal retirement benefits. In conclusion, Your Honor, I see I'm out of time. The Pension Protection Act is constitutional. Section 202 easily meets the rational basis test for traditional, traditional rational basis test for national economic legislation. Thank you, Your Honors. Thank you very much. Very briefly, in my brief I think I pointed out the distinction of all these powers that the Secretary has under ERISA exist whether, and that's the point of it all, she has those powers. Just as I said earlier about if there was a default situation, I could envision a pension fund saying we're loyal to our members, we're not going to participate in this hatchet job, we refuse to do anything to aid. Well, the Secretary would have to come in and enforce a default plan, maybe take over the plan, have the Pension Benefit Guarantee Corporation take it over. Are you, on behalf of your client, unwilling to accept a remand with an opportunity to amend and name the plan? You'll see where in my briefs I asked alternatively for that very same relief. In my complaint, I never cut off the bridge behind me. I said I asked for other equitable relief that this Court deems just and fair. Now, I still disagree with the Court on, like I said, all these enumerated powers that you mentioned in your Ninth Circuit Sear case and stating we don't see any limitation on who can be sued. But when I cited to you in my – I think the question is here state action. I mean, you haven't alleged any state action on the part of the government that would have coerced or either a joint action with the private party. You basically said they could have, they might have. What's your best theory if you were to amend your complaint on state action? All I have right now, Your Honor, and I would have more time on remand to answer that question, but all I have right now is the mere power of the Secretary under this statute is sufficient to satisfy state action. And under that reference, when I pointed the Court to Section 1451 under Title III of ERISA, the implication there is that a prohibition doesn't exist in Subtitle I to sue the Secretary of Labor, but a prohibition does exist in Title III suing the Secretary of Labor. I think there's great implication there is it's everybody's at the table under Subtitle I. Well, I think what the Secretary is suggesting is that if you substituted the pension plan and put them on notice, then they might well intervene, which would bring them to the table. And they've told me in conversation that we don't have to intervene. I'm faced with – They don't have to intervene. They could, but they don't necessarily. And I'm faced with the situation, the pension plan says they did it, and the Secretary is saying we didn't do it. And I'm left with I don't think Webster leaves me powerless to challenge this statute constitutionally, and I made the decision tactically that given all those powers and the concept of intervention anyway, meaning if you want to defend this statute constitutionally, you'll intervene. She's prepared to defend it. She's trying to do it, but she's following the dog. To me, that's your comment of the dog chasing his tail. At one point I thought that Judge Succo may have had this in mind to get the merits before you. I believe the merits are before you, and I believe under Rule 56 E and F, you can do what the district court could or should have done, even on your own motion under F. And when you look at the Secretary's answer, they didn't even admit that this plan is governed by ERISA in Paragraph 9. I mean, it was ridiculous. They didn't even admit they got the notice that said the notice went to the Secretary of Labor. Well, your time has expired. I want to thank you for your argument. Thank both of you for your arguments today. They're very helpful, and I appreciate you traveling out to Seattle to join us today. It was my client's only day in court. Thank you, Your Honor. Okay. The case has certainly been submitted for decision.
judges: Hawkins, Thomas, Nguyen